Filed 2/13/25  P. v. Coker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY ALLEN COKER,<br><br>    Defendant and Appellant. | C098840<br><br>(Super. Ct. Nos. 22CR1925, 22CR1926) |

Defendant Timothy Allen Coker was convicted in three separate cases of crimes that included domestic violence against his 81-year-old girlfriend while personally inflicting great bodily injury, violating a protective order, resisting an officer by force, and misdemeanor driving under the influence (DUI).  The resisting included telling officers, "I have your names and I am going to kill you all.  I am a marine scout sniper."  The domestic violence included hitting and punching his girlfriend, kicking her in the ribs, throwing an object at her head, and telling her it would be easy to kill her.  The trial court sentenced him to a total of seven years in prison.

1

Prior to trial on domestic violence charges, the court denied defendant's petition for mental health diversion, finding that defendant posed an unreasonable risk of danger to public safety.

On appeal, defendant contends the trial court abused its discretion by denying his petition for mental health diversion because there was no evidence to support the finding that he posed an unreasonable risk of committing a super strike. We disagree and affirm.

Undesignated section references are to the Penal Code, and undesignated rule references are to the California Rules of Court.

FACTUAL AND PROCEDURAL BACKGROUND

*Defendant's Charges*

In case No. 22CR1926, an information charged defendant with committing felony domestic violence against his girlfriend (count 1) on or about October 4, 2022, with an enhancement that he personally inflicted great bodily injury, as well as committing misdemeanor violation of a protective order on the same day (count 2) and misdemeanor domestic violence (count 3) against the same victim on or about September 22, 2022. The information also alleged five aggravating circumstances under rule 4.421.

In case No. 22CR1925, an information charged defendant with committing felony resisting arrest by force and misdemeanor resisting arrest (counts 1 and 2) on or about October 6, 2022, as well as committing misdemeanor reckless driving (count 3) and driving with an open container (count 4) on the same day. The information alleged three aggravating factors under rule 4.421.

In case No. 22CR1799, an information charged that on August 8, 2022, defendant was driving under the influence (count 1), driving with a blood-alcohol content of .08 percent or more (count 2), and that defendant's blood-alcohol content was .20 percent or more.

2

*Defendant's Petition for Mental Health Diversion*

On March 20, 2023, defendant petitioned for mental health diversion under section 1001.36 in cases Nos. 22CR1925 and 22CR1926. The petition attached an assessment screening form from the El Dorado County Health and Human Services, Behavioral Health Division. The screening form stated that defendant reported receiving treatment in Illinois for post-traumatic stress disorder (PTSD) and bipolar disorder, due to trauma he experienced in the Marine Corps. Defendant said that he experiences flashbacks, nightmares, sleepless nights, depression, and anxiety. According to defendant, he has a 100 percent disability rating from the United States Department of Veterans Affairs due to injuries and mental health. Defendant acknowledged a history of substance abuse that started with pain medications to treat service-related injuries but stated he is not currently using pain medications. Defendant also acknowledged that he drinks alcohol but does not believe his drinking is a problem and intends to stop after being released. Defendant stated that he used to write bad checks to get pain medication and was incarcerated, but this occurred 30 years ago, and he has not engaged in any other criminal activity.

The assessment also recounted the events that led to defendant's current incarceration. Defendant attributed his initial arrest to his girlfriend's mistaken belief that he struck her, when a neighbor actually did. According to police reports, on October 4, 2022, when a no-contact order was in place to protect defendant's girlfriend, defendant, while staying with her, threatened, hit, and kicked her because she had gotten him arrested. On October 6, 2022, defendant's girlfriend went to the hospital for injuries to her ribs. The same day, a deputy saw defendant run a red light while driving fast. The deputy pulled defendant over and smelled a strong odor of alcohol. Defendant threatened to kill the officers involved stating, "I have your names and I am going to kill you all. I am a marine scout sniper." Despite these events, defendant stated he had never perpetrated violence.

3

The assessment showed defendant was diagnosed with PTSD and severe alcohol use disorder but ruled out bipolar disorder. The assessment further stated that defendant meets the criteria for mental health diversion and recommended mild to moderate health services and a substance use disorder treatment program.

*The Diversion Hearing*

On April 3, 2023, in cases Nos. 22CR1925 and 22CR1926, the trial court conducted a hearing on defendant's petition for mental health diversion. The People opposed defendant's petition, arguing that while his PTSD diagnosis made him eligible for mental health diversion, defendant was not suitable because he posed an unreasonable risk to society.

The People summarized the underlying facts in case No. 22CR1926. On September 22, 2022, defendant punched his girlfriend in her left breast and threw an object at her head. Defendant told his girlfriend it would be easy to kill her and threatened to kill her dog. Defendant was arrested and taken into custody, where he was served with a protective order forbidding him from contacting his girlfriend or going to her location. Defendant called his girlfriend from jail saying that he intended to come back to her house after he was released, and he would ensure that no one would know. True to his word, when released on October 4, 2022, defendant went to his girlfriend's house and kicked her in the ribs, causing great bodily injury. The trial court also noted that, according to its review of the mental health screening assessment, defendant kicked his girlfriend because she had him arrested. When his girlfriend sought treatment at a hospital for the injuries, she stated she was 81 years old.

Regarding case No. 22CR1925, the People explained that on October 6, 2022, defendant threatened to shoot law enforcement officers when he was pulled over for reckless driving. The trial court also noted that, according to the assessment, defendant ran a red light while driving fast and was pulled over by a deputy. The deputy smelled a strong odor of alcohol and found beer and vodka in the car. During the incident,

4

defendant claimed to be a Marine Corps sniper and said that he had the names of all the officers and threatened to kill them.

While acknowledging that defendant's criminal history of forgery and theft-related offenses in Illinois did not involve violence, the People maintained that, given defendant's recent violent conduct in a short amount of time, defendant posed an unreasonable risk to society.

In response, defense counsel noted that the People had conceded that defendant was eligible for diversion, so their argument was that defendant was not suitable because the facts of the cases give rise to a reasonable fear that defendant will commit a super strike. Counsel argued, however, that defendant's threats and violence were common in domestic violence cases and the Legislature did not include domestic violence felonies as super-strike offenses. Since behavioral health had determined that defendant was suitable for diversion and that defendant could be helped, there was no basis to deny the petition on public safety grounds.

The trial court expressed its concern that based on its review of the screening assessment, there were two instances of domestic violence, and, in the second, defendant disregarded a protective order and went to stay with his girlfriend, then kicked her for having him arrested. The court expressed further concern about the circumstances of the October 6 arrest, i.e., defendant was pulled over for running a red light, the deputy smelled a strong odor of alcohol and found beer and vodka in the car, and then defendant stated he had the names of the officers, was a Marine sniper, and would kill them all. The trial court also found concerning that defendant had a DUI history, had been charged with a blood-alcohol content in excess of .20 percent, and then ran a red light while driving fast and drinking in the car. The trial court noted that defendant's blood-alcohol content was .234 percent. The court also noted that defendant had received an advisement that he could be charged with murder if he continued to drink and drive and a fatality occurs.

5

The trial court questioned defense counsel whether these circumstances did not indicate that defendant was at a very high risk to commit a super strike.

Defense counsel responded that the Legislature chose not to exclude such defendants as a class from mental health diversion. Defense counsel suggested that defendant's treatment plan could include alcohol monitoring and medication to help defendant abstain from alcohol, which would also likely help with impulse control and avoid recidivism. The trial court then reiterated that it found it troubling that defendant had engaged in repeated acts of violence that appeared to be escalating. It was also troubled by the serious threats to kill officers and a statement that as a Marine Corps sniper defendant had the capability to carry out his threats.

The People's final argument was that defendant's escalating violent conduct occurred in connection with the DUI charge, which is specifically excluded from mental health diversion. In addition, the prosecutor had just overheard defendant state in court that he does not drink, indicating defendant does not take responsibility for his current status and drinking problem. Also, since defendant had been incarcerated the second time, there had been hundreds of calls between defendant and his girlfriend, indicating defendant was blatantly ignoring the court's orders. The People contended that any argument that defendant might comply with alcohol monitoring, or any condition imposed by the trial court was a "joke," because defendant did not respect the court or its orders.

Defense counsel's final argument was that defendant's provocative statements were indicative of a mental health breakdown.

The trial court denied defendant's petition for mental health diversion, finding defendant was unsuitable because he posed a substantial and unreasonable risk to commit a super strike. The court explained that it was concerned about the escalation of violence and "particularly concerned when somebody actually threatens to commit a super strike and that threat is being discounted." The trial court observed that defendant was charged

6

with committing acts of violence, even though they were not violent crimes designated as super strikes, and threatened to commit one or more super-strike offenses by stating defendant was going to kill all the officers.

*Defendant's Trial in Case No. 22CR1926, Pleas in the Other Two Cases, Sentencing, and Appeals*

Case No. 22CR1926 proceeded to trial. In May 2023, a jury found defendant guilty of all counts and found true the great bodily injury enhancement. The jury also found true: the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; and defendant took advantage of a position of trust or confidence to commit the offense. The parties waived jury trial on the aggravating factor that defendant's crimes were numerous or of increasing seriousness, and the court found that to be true.

On the same day of the jury verdict in case No. 22CR1926, defendant resolved the two remaining cases by pleading no contest to count 1, resisting an officer, in case No. 22CR1925 and pleading no contest to count 2, misdemeanor DUI, in case No. CR221799, and admitting the allegation of having a blood-alcohol content of .20 percent or more.

The court sentenced defendant to seven years in prison for all three cases. Defendant appeals from cases Nos. 22CR1925 and 22CR1926

## DISCUSSION

Defendant contends the trial court abused its discretion by denying his petition for mental health diversion because there was no evidence to support the finding that he posed an unreasonable risk of committing a super strike. Defendant argues the trial court relied primarily on the fact that defendant had committed multiple acts of domestic violence, threatened to shoot police, and had a history of DUI's, which defendant maintains was insufficient to conclude he was likely to commit a super-strike offense.

7

Section 1001.36 sets forth a two-step process for pretrial diversion petitions. (§ 1001.36, subds. (b), (c).) In step one, the trial court must find the defendant eligible for pretrial diversion if: (1) the defendant has been diagnosed with a qualifying mental disorder; and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b).) Here, we need not address the first step, because at the mental health diversion hearing, the People conceded defendant's PTSD diagnosis and that the aggression he exhibited in the current charged crimes was symptomatic of PTSD.

At issue is the second step, suitability for pretrial diversion. (§ 1001.36, subd. (c).) A defendant is suitable when he will not pose an "unreasonable risk of danger to public safety" if treated in the community. (*Id.*, subd. (c)(4).) An "unreasonable risk of danger to public safety" is defined as "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)

"The violent felonies encompassed in this definition 'are known as "super strikes" and include murder [and] attempted murder . . . .' " (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) "In determining the risk of danger, section 1001.36 contemplates the trial court will consider the opinions of the district attorney, the defense, and qualified mental health experts, as well as the defendant's violence and criminal history, the current charged offenses, and any other factors the court deems appropriate." (*Id.* at p. 450; § 1001.36, subd. (c)(4).)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. [Citations.] A trial court has 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.' [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citation], or bases its decision on express or implied factual findings that are not

8

supported by substantial evidence.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147).) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not signal an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) It is the defendant's burden to establish an abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

We find no abuse of discretion here. On September 22, 2022, defendant punched his 81-year-old girlfriend, threw an object at her head, and told her it would be easy to kill her. Defendant was arrested and served with a criminal protective order. After being released, defendant returned to his girlfriend's house in violation of the order and, on October 4, 2022, kicked her in the ribs in retaliation for his arrest. Two days later, on October 6, 2022, while defendant's girlfriend was being treated in the hospital, defendant drove fast through a red light. The deputy who pulled him over smelled alcohol and saw open containers in the car. When arrested, defendant told the officers, "I have your names and I am going to kill you all. I am a marine scout sniper." Thus, the facts of the current offenses were violent and escalated over a matter of a few days from domestic violence to domestic violence causing great bodily injury to threats to kill police officers made with a claim that defendant had the military training to carry out the threats.

Moreover, defendant's DUI history further indicated he posed an unreasonable risk to commit a super-strike offense. The trial court observed that the circumstances of the October 6 arrest—where defendant threatened to kill officers—were concerning as related to the DUI charges in case No. 22CR1799, where in August 2022 defendant was alleged to have driven with a blood-alcohol content of .20 percent. Further, a probation report the trial court had reviewed showed that defendant had a history of DUI convictions, and the court also noted defendant had received the advisement that he could be charged with murder if he continued to drink and drive and a fatality occurs. Nonetheless, in case No. 22CR1925, defendant was charged with running a red light while driving fast and drinking in the car in October 2022, culminating in an arrest where

9

defendant threatened to kill police officers. Thus, the escalation of defendant's violent conduct occurred in the context of defendant's DUI history, where past DUI convictions and current DUI charges did not deter defendant's increasingly dangerous conduct.

Relying on *Moine*, defendant argues that threats to shoot police officers are insufficient to infer a likelihood that a defendant would commit a super-strike offense, where, as here, the defendant did not have a history of committing violent felonies. In *Moine*, the defendant was arrested after an incident in urgent care where he became upset when a referral was not approved and shouted, " ' "I can go home and get my gun and come back and shoot all of you." ' " (*People v. Moine*, *supra*, 62 Cal.App.5th at pp. 444-445.) But here, defendant not only threatened police officers, he also inflicted great bodily injury on a vulnerable victim. (See *People v. Brown* (2024) 101 Cal.App.5th 113, 124 [distinguishing *Moine* because the defendant "did not just threaten or intimidate the victim in this case—he invoked extreme physical violence against a vulnerable victim in response to a relatively minor altercation"].)

Moreover, in overturning the trial court's denial of mental health diversion, the appellate court in *Moine* noted that the defendant had been on pretrial release for two years. (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 451.) This "indicate[d] the court necessarily found that [the defendant] was not likely to cause 'great bodily harm to others' if released." (*Ibid*.) The appellate court explained "[i]t is logically inconsistent to deny mental health diversion on the ground that [a defendant] was likely to commit a super-strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Moine*, at p. 451.)

Here, by contrast, defendant was in custody at the time of his pretrial diversion petition because when released from custody after his first arrest for domestic violence, he went to his girlfriend's house, in violation of a criminal protective order, and kicked her in the ribs in retaliation for his arrest, inflicting great bodily injury. After defendant was arrested and charged for this crime, the trial court reviewed the probation

10

department's pretrial release report recommending defendant's continued detention as a public safety risk, based on, inter alia, the "[s]afety of the victim in that this is the second offense within 30 days of the defendant causing corporal injury to the same victim" and defendant "resisted arrest and threatened to kill the officer." The trial court denied defendant's request for release citing public safety. Subsequently, the probation department prepared a bail investigation report recommending that bail remain as set, in part because "defendant continues to disregard the law and orders of the Court by committing new offenses and injuring the victim," and "pose[d] a significant risk to the victim and the community." The trial court ordered bail to remain as set.

Defendant next argues that his conduct was "far less dangerous" than that in *Whitmill* because here defendant was not armed in any of his cases. We find *Whitmill* distinguishable.

In *Whitmill*, a veteran with PTSD fired a shot in the air near his girlfriend and their friend, seemingly as a warning when the friend approached him; then the defendant ran away and was arrested without incident. (*People v. Whitmill*, *supra*, 86 Cal.App.5th at pp. 1142-1144.) In overturning denial of mental health diversion, the appellate court found significant that the defendant ran from further confrontation, threw away his firearm, and peacefully complied with law enforcement's request to come forward. (*Id.* at pp. 1151, 1156.) The appellate court in *Whitmill* noted the veteran injured no one, and his "compliant non-violent behavior after negligently firing one shot into the air mitigates any inference that [he] is likely to commit a super-strike offense in the future." (*Id.* at p. 1154.)

Here, defendant punched his girlfriend, was arrested, and when released from custody, returned to her house in violation of the order issued to protect her and attacked her so violently she went to a hospital for treatment, and defendant accordingly was charged with domestic violence causing great bodily injury. Defendant then drove

11

recklessly while drunk, leading to his arrest and threats to kill arresting officers. This aggressive and violent conduct distinguishes this case from *Whitmill*.

Defendant also argues that, as in *Whitmill*, his treatment plan included treatment for mental health and substance abuse, he stated he was willing to comply, and the assessment opined that defendant could be treated in the community if he complied with the treatment plan. However, defendant's statement of willingness to comply with a treatment plan is belied by the underlying events and his own statements. This case involves successive charges for DUI and then driving with an open alcohol container in the car; yet defendant told the clinician, who diagnosed him with severe alcohol use disorder, that he did not believe that his drinking was a problem. Defendant stated that he planned to quit drinking when released. But at the mental health diversion hearing, defendant was overheard to say that he does not drink. Defendant has a record of DUI convictions and his threats to kill police officers occurred during an incident where defendant drove while drinking alcohol within a short time after he had driven with a blood-alcohol content in excess of .20 percent. Nonetheless, defendant remains resistant to the idea that he has a problem with alcohol, an attitude that is not consistent with either the diagnosis or successful compliance with a substance abuse treatment program.

Nor are we persuaded that the trial court's statement that it was "particularly concerned when somebody actually threatens to commit a super strike and that threat is being discounted" equated to the court commenting that defendant was not being adequately punished for threats to law enforcement, thus prioritizing punishment over the purpose of the mental health diversion statute. (See *People v. Whitmill*, *supra*, 86 Cal.App.5th at p. 1156 [in determining suitability for mental health diversion, a trial court may not rely on objectives stated in rule 4.410 to deter the defendant from committing future offenses but must rely on the objectives of the mental health diversion statute]; *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 890-892 [no indication trial court considered goals set forth in section 1001.35 of promoting diversion of individuals

12

with mental disorders from the criminal justice system consistent with protecting public safety and providing diversion that meets the treatment and support needs of individuals with mental disorders].)

While defendant speculates as to the trial court's possible meaning, we find it clear. The trial court was not commenting that mental health diversion would insufficiently punish defendant, but was commenting that defense counsel had discounted the seriousness of defendant's threats when counsel argued that defendant's statements about "the marine sniper, and some other incredibly provocative things" were uttered in the context of a mental health breakdown, where such statements were more likely. The trial court's comment was not akin to the reliance on the general sentencing objectives set forth in rule 4.410, disapproved of in *Whitmill* and *Qualkinbush*. (See *People v. Whitmill*, *supra*, 86 Cal.App.5th at p. 1156; *People v. Qualkinbush*, *supra*, 79 Cal.App.5th at p. 892.)

Again, relying on *Whitmill*, defendant also contends the trial court erred in relying on facts merely recited by the prosecutor in concluding defendant posed an unreasonable risk to public safety. (*People v. Whitmill*, *supra*, 86 Cal.App.5th at p. 1152 ["After reciting the facts of the incident, the People make the generic claim that appellant demonstrated he is violent, poses an unreasonable risk of danger to the public, and likely to commit a super strike, namely attempted murder or murder . . . [but] offer no specific substantial evidence to support their claim"].) We disagree that it is insufficient to rely on the facts of a defendant's offenses, as recited by the prosecutor or otherwise, to determine that the defendant is likely to commit a super strike. Section 1001.36 expressly provides that in determining whether defendant will pose an unreasonable risk of danger to public safety if treated in the community, the trial court may consider "*the opinions of the district attorney*, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, *the current charged offense*, and *any other factors that the court deems appropriate*." (§ 1001.36,

subd. (c)(4), italics added; see also *People v. Bunas* (2022) 79 Cal.App.5th 840, 862 ["there is nothing in section 1001.36, with respect to either eligibility or suitability, that precludes a trial court from relying primarily, or even entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion"].) Nor did the trial court exclusively rely on the prosecutor's recitation; rather, the trial court stated at the hearing it had considered previous reports from the probation department that recommended that defendant remain in custody as a public safety risk based on the facts of his current offenses.

Defendant also argues that the trial court abused its discretion by applying the wrong legal standard with respect to defendant's criminal record and current offenses involving alcohol because the court did not evaluate the risk of danger defendant posed "if treated in the community." (§ 1001.36, subd. (c)(4).) We understand defendant to maintain that the trial court should have considered the lessened risk defendant posed when in treatment for alcoholism. Defendant acknowledges that he was diagnosed with "Alcohol Use Disorder, Severe" but notes his treatment plan recommended substance abuse treatment. As discussed above, there was ample evidence that defendant would not comply with an alcohol abuse treatment program, including that, despite two cases in close succession involving alcohol-impaired driving, defendant told the clinician who prepared that mental health diversion assessment that he did not have a drinking problem, and he was overheard at the hearing stating that he did not drink.

Relatedly, defendant asserts that the trial court's reasoning that defendant's alcohol abuse made him more likely to commit a super strike is too attenuated and would exclude defendants with a DUI from mental health diversion, in contrast to the Legislature's intent to expand mental health diversion. But here, defendant's alcohol use was intimately involved in the incident on October 6 where defendant, driving with open containers of alcohol in the car, threatened the lives of the police officers who pulled him over when he ran a red light and resisted arrest with force.

14

Finally, defendant claims that the fact that his current charges involved violence is not sufficient alone to deny mental health diversion, arguing that the crimes in *Moine*, *Whitmill*, and also *People v. Williams* (2021) 63 Cal.App.5th 990 involved more violence, and the defendants in those cases were found suitable for diversion. *Williams* does not aid defendant any more than *Moine* or *Whitmill*. In *Williams*, the defendant stalked, harassed, and threatened a married couple who owned an autobody shop in retaliation for what he perceived as racist treatment. (*Id.* at p. 993.) As the appellate court pointed out, the defendant "never actually assaulted anyone or engaged in violence." (*Id.* at p. 1003.) Further, as in *Moine*, the defendant in *Williams* was on pretrial release. (*Ibid.* [defendant "was released on bond for more than two years without incident"].) By contrast, defendant attacked his girlfriend twice and, after the second time, was detained in custody as a public safety risk.

The record before us thus amply supports the trial court's finding that defendant posed an unreasonable risk of danger to public safety, so the trial court did not abuse its discretion in denying defendant's petition for mental health diversion.

DISPOSITION

The judgment is affirmed.

            /s/_____
            MESIWALA, J.

We concur:

/s/_____
ROBIE, Acting P. J.

/s/_____
MAURO, J.